REID, Judge.
This is a suit brought by Blue Bonnet Creamery, Inc., against Denis E. Simon Jr., doing business under the trade name of Simons’ Creamery for the sum of $9074.68 with legal interest' from judicial demand until paid. It further is predicated upon a series of checks dated from December 9th, 1958 through February 17th, 1959. The suit alleges that the defendant issued these worthless checks in exchange for goods and merchandise delivered to the defendant at the same time.
The petition further alleges that the defendant knew at the time of the issuance of said checks that he did not have sufficient credit with the Commercial Bank and Trust Company of Covington, Louisiana for payment of said checks in full, upon their presentation. It is further alleged that plaintiff gave defendant written notice of said non-payment upon presentation, and said defendant has failed to pay.
Plaintiff then sued for additional amount of $1081.88 for some cartons and containers furnished the defendant. Domiciliary service was made on September 1st, 1959 by serving papers on Mrs. Yvonne Simon, wife of the defendant, Denis E. Simon Jr. A preliminary default was entered on November 2nd, 1959 and judgment confirmed on November 6th, 1959 and signed accordingly.
Notice of Judgment was served on the defendant through domiciliary service on his wife, Mrs. Yvonne Simon on November 10th, 1959. On November 7th, 1960 defendant applied for and received an Order for Devolutive Appeal.
The testimony offered by the plaintiff on confirmation of default was transcribed and is a part of the record. The plaintiff used two witnesses, Joseph Eugene Reno, and Mrs. Edna Heintz. Mr. Reno testified that he was Manager and Secretary-Treasurer in charge of plaintiff’s business. Mr. Reno identified the series of checks offered in evidence, and testified that they were signed by Denis E. Simon Jr., and that Simon had been buying milk from them for some time, which checks totaled the sum of $9074.68. He further identified *444 a copy of a letter sent to the defendant on June 18th, 1959 identified as P-2, requesting payment of the checks.
Mr. Reno testified that all of these checks were given to him for merchandise which was delivered to Mr. Simon. They were in payment of milk received by Simon from the Blue Bonnet Creamery. He testified that these checks had been returned by the Bank and Mr. Simon had not paid them.
Mrs. Heintz, who is a Deputy Clerk of Court, testified that there had been no answer or pleadings filed.
This Appeal is taken to the portion of the Judgment of the lower court where it is found:
“that defendant had issued to petitioner $9074.68 total of worthless checks during the period from December 9th, 1958 through February 17th, 1959 in the exchange for goods and merchandise delivered to defendant at the same time.”
The question before the court is whether the finding of the trial Judge that the checks were given to the defendant in exchange for goods and merchandise delivered to the defendant at the same time with the intent to defraud and whether the finding was supported by exceptionally clear, strong and convincing evidence, or if there was any evidence at all. The checks were offered in evidence and the court believes an examination of them will show a definite pattern as to what happened.
The first check offered No. 498 dated December 9, 1958 was for the sum of $1487.64. This check was not honored upon presentation and was redeposited at least two, or maybe three times and was last .returned to the Commercial Bank on January 6th, 1959 with a notation “returned per instructions by Mrs. Denis Simon.”
The next check dated December 31, 1958 for the sum of $1456.53 was finally returned “NSF” on January 12, 1959 and it too had been deposited at least two times..
The next check No. 526 dated January-6, 1959 was finally returned “payment stopped” after it had been sent for collection several days after its issuance.
The next is a series of checks: No. 1 dated January 31, 1959 for $508.08, check No. 586 dated February 7, 1959 for $550. 66, check No. 564 dated January 27, 1959 for $395.01, check No. 587 dated February 9, 1959 for $361.12 which were finally returned on February 23, 1959. These checks show that they had been deposited and redeposited two and maybe three times. Another series of checks dated from February 4, 1959 through February 16, 1959 numbered 579, 2, 599, 600, and 580 were returned on February 23, 1959 after having been deposited and redeposited two or three times. Another series of checks dated from February 6, 1959 through February 18, 1959 which were numbered 585, 593, and 3, were finally returned “NSF” on February 24, 1959 after having been deposited and redeposited two or three times.
The court is convinced that if there was any fraud perpetrated by the defendant by giving these checks for goods which he received on the day the merchandise was delivered that plaintiff acquiesced in the fraud by taking checks when he knew, or was chargeable with knowledge, that they would be dishonored. In other words, this has been a system of selling merchandise on credit which is not fraudulent.
After shutting off defendant’s credit the plaintiff waited four months before attempting to collect, or taking any steps to collect any of these checks. The court feels that after the first check bounced the plaintiff should have been placed on notice of the condition of the man’s credit and that any subsequent checks received were accepted with the knowledge of the fact that they might have expected them to be dishonored upon presentation. The *445 court feels that there is no clear and convincing evidence of fraud as required by law.
This judgment was rendered by default and the court feels that the plaintiff was in position to put on more convincing evidence as to the fraud and at least give some explanation as to why these checks were continually accepted, deposited and redeposited when they continually bounced.
Therefore, it is ordered that that portion of the judgment wherein the lower court found:
“that defendant had issued to petitioner $9074.68 total of worthless checks during the period from December 9th, 1958 through February 17th, 1959 in exchange for goods and merchandise delivered to defendant at the same time.”
be reversed and this portion of the judgment be stricken therefrom and in all other respects the judgment of the lower court be affirmed, the appellee to bear all costs.
Reversed in part and affirmed in part.