146 So.2d 162

**BLUE BONNET CREAMERY, INC.**

v.

**Denis E. SIMON, Jr., and Gulf
Milk Association.**

No. 46038.

Nov. 5, 1962.

Mentz & Ford, Henry A. Mentz, Jr.,. Hammond, for applicant.

Johnson & James, A. Clayton James, Jr.,. Franklinton, for defendants.

HAMLIN, Justice.

In the exercise of our supervisory control (Art. VII, Sec. 11, La.Const. of 1921,. L.S.A.) we granted certiorari to review judgments of the Court of Appeal, First Circuit (La.App., 136 So.2d 443; La.App.,. 136 So.2d 445), which reversed in part and affirmed in part a judgment of the 22nd Judicial District Court, Parish of St. Tammany, and reversed in its entirety a judg-

ment of the 21st Judicial District Court, Parish of Tangipahoa.[1]

In payment for dairy products received over a period of approximately two and one-half months, defendant Denis E. Simon, Jr. (hereinafter referred to as Simon), gave sixteen worthless checks in the total amount of $9,074.68. He later received a discharge in bankruptcy for all debts and claims made provable by the Federal Bankruptcy Act (USCA, Title 11, Bankruptcy), except such debts as are by the Act excepted from the operation of a discharge in bankruptcy.

Presented for our determination is the correctness of the judgments of the Court of Appeal which held that the checks were not fraudulently given, and that the indebtednesses which said checks were supposed to discharge were debts dischargeable in bankruptcy.

Pertinent facts of record are to the effect that between December 9, 1958 and February 18, 1959, plaintiff Blue Bonnet Creamery, Inc. (hereinafter referred to as Blue Bonnet), accepted sixteen checks from Simon in payment of purchases made.[2] The checks, drawn on the Commercial Bank & Trust Co., Covington, Louisiana, were deposited by Blue Bonnet in the Guaranty Bank & Trust Company, Hammond, Louisiana. They were not honored; they were charged to Blue Bonnet's account by the Guaranty Bank and returned to Blue Bonnet with the notation, "Not Sufficient Funds"; upon redeposit, the checks were again returned to Blue Bonnet with the same notation.

On June 18, 1959, Blue Bonnet wrote to Simon, stating that it was still holding the above checks and requesting that the checks be made good within ten days after receipt of its letter. Simon failed to pay, and on August 28, 1959, Blue Bonnet filed suit in the 22nd Judicial District Court, Parish of St. Tammany, praying for the total amount of the checks ($9,074.68), plus an additional sum of $1,081.88 it alleged was due by Simon for cartons and containers furnished from March 1 through April 30, 1959, as per the account attached to the petition. The petition contained the following allegation:

"That your petitioner alleges that defendant knew at the time of issuance of said checks that he did not have suf-

1. The matters decided by the district courts concerned similar issues; they were consolidated for the purpose of hearing on appeal.
2. December 9, 1958 ($1,487.64); December 31, 1958 ($1,456.53); January 6, 1959 ($1,172.66); January 27, 1959 ($395.01); January 31, 1959 ($508.08); February 4, 1959 ($354.60); February 5, 1959 ($418.55); February 6, 1959 ($427.23); February 7, 1959 ($550.66); February 9, 1959 ($361.12); February 10, 1959 ($363.31); February 12, 1959 ($408.13); February 14, 1959 ($320.48); February 16, 1959 ($298.35); February 17, 1959 ($245.82); February 18, 1959 ($306.51).

ficient credit with the Commercial Bank and Trust Company of Covington, Louisiana, for the payment of said checks in full upon their presentation."

On November 6, 1959, the district court, Parish of St. Tammany, rendered a judgment by default in favor of Blue Bonnet and against Simon in the full amount of $10,156.56.[3] On confirmation of the default, James Eugene Reno, Manager and Secretary-Treasurer of Blue Bonnet, identified the sixteen checks herein involved and the letter demanding that they be paid; he stated that the checks were in payment of milk received by Simon from the creamery; he also testified with respect to the cartons and containers furnished Simon. Reno concluded his testimony by stating that the checks were returned by Simon's bank unpaid, and that Simon had never paid for the cartons and containers. Mrs. Edna Heintz, a deputy clerk of court, testified that neither answer nor pleadings were filed by Simon in the matter.

On November 7, 1960, Simon filed a petition for a devolutive appeal from said judgment of the 22nd Judicial District Court, Parish of St. Tammany. The Court of

Appeal stated, however, that the appeal was taken to that portion of the judgment of the lower court where it was found, "that defendant had issued to petitioner $9,074.68 total of worthless checks during the period from December 9, 1958, through February 17, 1959, in the exchange for goods and merchandise delivered to defendant at the same time."

On April 4, 1960 (before the devolutive appeal, supra, was taken), Blue Bonnet filed a petition in the 21st Judicial District Court, Parish of Tangipahoe, making Simon's employer, Gulf Milk Association, Inc. (hereinafter referred to as Gulf Milk), a garnishee. Blue Bonnet alleged that it had obtained the above judgment in the St. Tammany Parish District Court, had applied for a writ of fieri facias against Simon, and had reason to believe that Gulf Milk had property or effects in its possession belonging to Simon; it prayed that Gulf Milk be cited to answer under oath, through its President, the interrogatories annexed to the petition and after due proceedings that it be condemned to pay to Blue Bonnet the amount of the writ of fieri facias.

---

3. The pertinent part of the judgment reads, "This cause came on this day for trial, defendant having been duly served on September 1, 1959, a preliminary default having been regularly entered on Monday, November 2, 1959, and more than two clear days having elapsed without defendant appearing or answering, was duly tried and submitted, and the

Court finding that defendant had issued to petitioner $9,074.68 total of worthless checks during the period December 9, 1958, through February 17, 1959, in exchange for goods and merchandise delivered to defendant at the same time and further that defendant is indebted to petitioner in the amount of $1,081.88 for cartons and containers, * * * *".

An order was rendered making Gulf Milk garnishee and requiring it to answer, under oath categorically and in writing, the interrogatories annexed to the petition within ten days from service of the order.

All interrogatories were answered in the negative except the 4th interrogatory. Gulf Milk answered that interrogatory by stating that Simon was employed by it at the rate of $5,400.00 per year; that he was paid bi-weekly in the amount of $207.69; that no other judgments or garnishments effected said salary; and, that the last salary check received by defendant up to that time was on April 5, 1960.

On June 20, 1960, the Judge of the 21st Judicial District Court, Parish of Tangipahoa, rendered a judgment on Blue Bonnet's petition for the garnishment of Gulf Milk as to Simon's salary. The Judge observed in said judgment that on April 13, 1960, the Bankruptcy Division of the United States District Court at New Orleans issued a Stay Order, subject to hearing on April 18, 1960; he ordered that the garnishment under fieri facias issued against Gulf Milk remain in effect pending further proceedings by Simon to obtain his discharge, and that the question of whether or not Simon's discharge in bankruptcy would effect this particular debt be taken up in due course by said 21st Judicial District Court, Parish of Tangipahoa. This judgment further ordered that Gulf Milk deduct from the wages of Simon an amount equal to twenty per cent. of his earnings, said deduction to continue until the matter of the dischargeability of the above judgment be finally determined, and that said funds be held by Gulf Milk subject to further orders of the Tangipahoa Parish District Court.

On February 24, 1960, Simon was adjudged a bankrupt on a petition filed by him on February 24, 1960.

On September 4, 1960, the Referee in Bankruptcy (presumably as a result of the hearing on April 18, 1960) rendered an order to the effect that Simon was discharged from all debts and claims which were made provable by the Act against his estate, except such debts as were, by said Act, excepted from the operation of a discharge in bankruptcy.

After the order of September 4, 1960, Simon brought a rule to show cause why the garnishment under writ of fieri facias should not be set aside and annulled, and why Gulf Milk should not be ordered to tender him the monies withdrawn from his salary and held in escrow.[4] Blue Bonnet

---

4. In his order of September 4, 1960, the Referee in Bankruptcy stated that, "after due notice by mail only one objection was made within the time fixed by the Court, and that objection to the discharge of said bankrupt under the Act of Congress relating to bankruptcy to said creditor's claim having been deferred upon agreement of counsel for bankrupt and Blue Bonnet Creamery, Inc. for determination of the dischargeability of said debt in the State Courts."

prayed for recall of the rule, alleging that its judgment was based on a debt for money obtained by false pretenses or false representation (U.S.C.A. Title 11, Sec. 35), which was not a dischargeable debt.

The trial court, in written reasons, stated that Blue Bonnet's original judgment was taken by default against Simon who apparently did not make any appearance or defense whatsoever; that the judgment contained a finding that Simon had issued $9,074.68 total of worthless checks for goods and merchandise delivered to him at the same time. It ruled that it was of the opinion that the sum of $9,074.68, which was shown on the face of the judgment to be represented by worthless checks, *was not* discharged, but that the sum of $1,081.88 shown in said judgment *was* discharged by the discharge in bankruptcy. The court then rendered judgment on October 28, 1960, in favor of Blue Bonnet and against Simon and Gulf Milk, decreeing that Blue Bonnet's judgment obtained in St. Tammany Parish was not a dischargeable debt within the Federal Bankruptcy Act up to the amount of $9,074.68, plus interest; it further decreed that the writ of fieri facias was valid up to $9,074.68; it ordered that Gulf Milk deliver to Blue Bonnet twenty per cent. of Simon's salary from the date of service of the original writ through October 28, 1960, recalled and vacated the rule issued, and ordered the garnishment to proceed according to law.

Simon appealed from this judgment also.

The note of evidence appearing in the record of the garnishment proceedings is meager. Counsel for Simon merely introduced in evidence the discharge order of September 4, 1960 obtained in federal court. Counsel for Blue Bonnet offered the entire record in the St. Tammany Parish suit on the checks, including the checks attached to the petition. No oral testimony was presented to the court; the matter was submitted and decided on briefs filed by counsel.

On appeal, the Court of Appeal stated that with respect to the judgment rendered by default in the St. Tammany Parish Court, it felt that Blue Bonnet was in a position to put on more convincing evidence as to the fraud and at least give some explanation as to why the checks were continually accepted, deposited, and redeposited when they continually bounced. The court was convinced that "if there was any fraud perpetrated by the defendant by giving these checks for goods which he received on the day the merchandise was delivered that plaintiff acquiesced in the fraud by taking checks when he knew, or was chargeable with knowledge, that they would be dishonored. In other words, this has been a system of selling merchandise on credit which is not fraudulent." The Court of Appeal reversed that portion of the judgment wherein the lower court

found, "that defendant had issued to petitioner $9,074.68 total of worthless checks during the period from December 9th, 1958 through February 17, 1959 in exchange for goods and merchandise delivered to defendant at the same time," and affirmed said judgment in all other respects.

The Court of Appeal reversed the judgment of the Tangipahoa Parish Court in the garnishment proceedings and ordered that all funds held in escrow be delivered to Simon.

In this Court, relator Blue Bonnet assigns the following errors to the Court of Appeal:

1. "In reversing a judgment by default, where same was confirmed strictly in accordance with law, and the defendant was legally cited and served."

2. "By injecting into the case the issue of estoppel or acquiescence, where no such plea had been made by defendant, in the absence of any evidence of intent thereof in the record and in the face of the rule that estoppels are not favored by law and cannot be sustained by argument or inference."

3. "In refusing to remand the case for the purpose of further evidence as to whether plaintiff in fact intended an acquiescence in defendant's alleged fraud."

Respondent Simon, in arguing that the judgments of the Court of Appeal should be affirmed, contends that the record in this case is void of any evidence which shows an intent to deceive; that there is no proof that any false representation of Simon was the reason for Blue Bonnet delivering milk to him; and that "when suits have been brought on an obligation and it has been reduced to judgment, the character of the obligation and the question whether the same is dischargeable in bankruptcy must be determined from the entire record of the suit, but no evidence is admissible to go beyond the entire record of the suit. Therefore, in a proceeding of this nature it would be improper to remand this case to the district court for the taking of additional evidence." [5]

Under the law of this State, the plaintiff who seeks a judgment by default must prove the essential allegations of his demand as fully as if they had been specially denied, for, in order to recover, he must make his claim certain. Pepe v. Tournage, La.App., 128 So.2d 56; Dreher v. Guaranty Bond & Finance Co., 184 La. 197, 165 So. 711.

At the time Blue Bonnet secured its judgment by default, it was concerned with

5. A statement from respondent Simon's brief. In oral argument counsel stated that although he was of the opinion that the debt was dischargeable in bankruptcy, he had no objection to a remand.

proving that Simon was indebted unto it for goods and merchandise and that he had issued worthless checks to cover the indebtedness; it was not concerned with the question of bankruptcy (Simon had not yet been declared à bankrupt), nor with the issues of provable debts or dischargeability from bankruptcy. Blue Bonnet had alleged that Simon knew at the time of issuance of the checks in exchange for goods and merchandise that he did not have sufficient credit; but, its principal allegations had been with respect to the fact that it had not been paid, notwithstanding the written notice of June 18, 1959. In other words, Blue Bonnet desired a money judgment on which it could execute. The trial judge was satisfied with the proof submitted and rendered judgment for Blue Bonnet.

When Blue Bonnet sought to execute upon its judgment in the garnishment proceedings, it was then confronted with the fact of Simon's discharge in bankruptcy. Simon resisted the garnishment by merely introducing his discharge in bankruptcy; he made no personal appearance in court to explain his issuance of the worthless checks after they had been offered in evidence by Blue Bonnet. The trial judge was of the opinion that the sum of $9,074.68 was not a dischargeable debt and since a default judgment on worthless checks had been taken against Simon in St. Tammany Parish, judgment should be rendered in favor of Blue Bonnet because of the issuance of worthless checks.

Under the circumstances set forth *above, we do not believe that the Court of Appeal had sufficient evidence before it to make its findings.* We find that it is not possible to pronounce definitely on this cause in the state in which it is, because the parties have failed to adduce the necessary testimony. Testimony with respect to whether Simon made false representations to Blue Bonnet, whether Blue Bonnet relied on such representations, and whether Blue Bonnet was misled by the representations of Simon or acquiesced therein, is necessary to a proper determination of this matter. Blue Bonnet and Simon should be given an opportunity to submit testimony with respect to conditions existing at the time Blue Bonnet accepted Simon's checks, and also with respect to the continued acceptance of the checks. If no fraud accompanied the tendering of the checks, Simon should be afforded an opportunity to testify to such fact.[6]

In the furtherance of the ends of justice this case should be remanded, in order that Blue Bonnet and Simon may have the opportunity of meeting with legal certainty the requirements necessary to prove the dischargeability or non-dischargeability

6. Cf. DeLatour v. Lala, 15 La.App. 276, 131 So. 211; Accounts Supervision Co. v. Atley, La.App., 89 So.2d 508; Seybold Finance Service, Inc. v. Schwaner, La.

of the debt herein involved. Article 2164, West's LSA, Code of Civil Procedure. Cf. Dreher v. Guaranty Bond & Finance Co., 184 La. 197, 165 So. 711; Strange v. Albrecht, La.App., 178 So. 884; Buffalo Specialty Co. v. G. Pitard's Sons, 14 Orl. App. 395; Pucheu v. Town of Jennings, 107 La. 413, 31 So. 864.

However, it would serve no useful purpose to remand to the 22nd Judicial District Court for the Parish of St. Tammany the case decided in that court. As stated, supra, that court was primarily concerned with the question of indebtedness vel non.

Therefore, our conclusion is that this case should be remanded to the 21st Judicial District Court for the Parish of Tangipahoa, as that court is the one before which the garnishment proceedings have been taken and it is the only jurisdiction in which the funds are being held by Gulf Milk.

For the reasons assigned, the judgment of the Court of Appeal, insofar as it reversed the judgment of the 22nd Judicial District Court for the Parish of St. Tammany, is set aside; the judgment of the Court of Appeal, reversing the judgment of the 21st Judicial District Court for the Parish of Tangipahoa, is set aside; the judgment of the 21st Judicial District Court for the Parish of Tangipahoa is also set aside; and, the case is remanded to the 21st Judicial District Court for the Parish of

Tangipahoa for further proceedings consistent with the views herein expressed. All costs to await final determination of the matter.

146 So.2d 407