797 So.2d 151 (2001)
Rebecca and Stanley SMITH
v.
Richard J. CLEMENT, M.D.
No. 01-87.
Court of Appeal of Louisiana, Third Circuit.
October 3, 2001.
*153 Oliver "Jackson" Schrumpf, Schrumpf & Schrumpf, Sulphur, LA, Counsel For Plaintiffs/Appellees: Stanley Smith, Rebecca Smith.
Lee H. des Bordes, Jr., Attorney at Law, Baton Rouge, LA, Counsel for Defendant/Appellant: Richard J. Clement, M.D.
Michele S. Caballero, M. Keith Prudhomme, Woodley, Williams, Boudreaux, Norman, Brown & Doyle, Lake Charles, *154 LA, Counsel for Defendant/Appellant: Louisiana Patients Compensation Fund.
Court composed of HENRY L. YELVERTON, BILLIE COLOMBARO WOODARD, and MICHAEL G. SULLIVAN, Judges.
SULLIVAN, Judge.
Dr. Richard Clement and the Patient Compensation Fund (PCF) appeal the confirmation of a default judgment against Dr. Clement. For the following reasons, we affirm.

Facts
On August 22, 1996, Dr. Clement delivered a baby boy to Rebecca and Stanley Smith. During her prenatal care, Ms. Smith decided that she did not want to get pregnant again and requested that Dr. Clement, who was her obstetrician, perform a bilateral tubal ligation on her when her baby was delivered. Dr. Clement was unable to perform the tubal ligation at that time due to adhesions in Ms. Smith's abdomen. Ms. Smith returned to the hospital approximately one month later for the tubal ligation.
Ms. Smith's hospital records contain an operative report in which Dr. Clement described the procedure he used during the bilateral tubal ligation he performed on Ms. Smith on September 19, 1996. The report indicates that he did remove a portion of each fallopian tube. Ms. Smith's hospital records also reflect that Dr. Clement submitted two specimen samples from the tubal ligation procedure to the pathology laboratory for examination. According to the pathology report prepared on the tissue samples, one sample was a partial excision of fallopian tube while the other was fibrovascular membranous tissue. Ms. Smith testified that she had at least two appointments with Dr. Clement after the tubal ligation surgery, but was never informed of these findings nor was she warned of the need for additional precautions to avoid becoming pregnant or the need for an additional surgery.
In September 1997, Ms. Smith learned that she was pregnant. On March 27, 1998, she delivered Bennon, a baby boy, three and one-half weeks prematurely. Mrs. Smith and her husband filed a medical malpractice claim against Dr. Clement, alleging that he failed to perform the bilateral tubal ligation properly, failed to verify that the surgery had been properly performed, failed to warn that the surgery had not been completed properly, and failed to warn that precautions against pregnancy should be taken. Dr. Clement waived his right to proceed before a medical review panel, and the Smiths filed this suit against him. After Dr. Clement failed to file an answer to the petition, the Smiths entered a default judgment against him. The trial court confirmed the default judgment and awarded the Smiths damages totaling $192,749.05.
Dr. Clement filed a motion for new trial and/or action for nullity, alleging he had not been served with the petition. After a hearing, the motion was denied. Dr. Clement appealed, alleging that the Smiths failed to present a prima facie case at the hearing on the confirmation of the default judgment. Thereafter, the PCF filed a petition of intervention and appeal, seeking to intervene in this matter as an interested third party and to be allowed to appeal on the basis that it was not given notice of the judgment rendered herein. Its motion for appeal was granted. The two matters were consolidated for appeal. On appeal, the PCF also asserts that the Smiths did not establish a prima facie case against Dr. Clement; it assigns the amount of damages awarded by the trial court as an additional error. The Smiths answered the appeal. They seek damages and attorney *155 fees for frivolous appeal by Dr. Clement and the PCF and assert that the PCF had no right to intervene and be granted an appeal in this matter.

Default Judgments
Dr. Clement and the PCF argue that the trial court erred in awarding the Smiths a judgment against Dr. Clement because they did not establish a prima facie case against him.
La.Code Civ.P. art. 1702 is applicable to default judgments and states in pertinent part:
A. A judgment of default must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
B. .... (2) When a demand is based upon a delictual obligation, the testimony of the plaintiff with corroborating evidence, which may be by affidavits and exhibits annexed thereto which contain facts sufficient to establish a prima facie case, shall be admissible, self-authenticating, and sufficient proof of such demand. The court may, under the circumstances of the case, require additional evidence in the form of oral testimony before entering judgment.
In Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993), the supreme court interpreted this article, holding:
In order for a plaintiff to obtain a default judgment, "he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant." Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La. 1989); Blue Bonnet Creamery, Inc. v. Simon, 243 La. 683, 146 So.2d 162, 166 (1962). "In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits." Thibodeaux, 538 So.2d at 1004. A plaintiff seeking to confirm a default must prove both the existence and the validity of his claim.
If no record is made of the confirmation proceeding, the judgment is presumed to be supported by sufficient evidence. When there is a record of the confirmation proceeding, the presumption does not attach. Id. The confirmation hearing was recorded and transcribed; thus, the presumption that the judgment is supported by sufficient evidence does not attach.
Medical malpractice actions are governed by La.R.S. 9:2794. The plaintiff in a medical malpractice action must prove:
(A) ... (1)The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians, dentists, optometrists, or chiropractic physicians licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians, dentists, optometrists, or chiropractic physicians within the involved medical specialty.
(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.
(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff *156 suffered injuries that would not otherwise have been incurred.
Specifically, Dr. Clement and the PCF assert that because the Smiths did not establish through expert witness testimony the standard of care applicable to Dr. Clement and that his treatment fell below the standard of care they failed to establish a prima facie case against him.
As a general rule, the opinions and testimony of expert witnesses are required in medical malpractice actions; however, that is not true in every case. In Pfiffner v. Correa, 94-924, 94-963, 94-992, pp. 9-10 (La.10/17/94); 643 So.2d 1228, 1234, the Louisiana Supreme Court held:
[E]xpert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. Though in most cases, because of the complex medical and factual issues involved, a plaintiff will likely fail to sustain his burden of proving his claim under LSA-R.S. 9:2794's requirements without medical experts, there are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert can, or in which the defendant/physician testifies as to the standard of care and there is objective evidence, including the testimony of the defendant/physician, which demonstrates a breach thereof.
Furthermore, a specialist in one field can give expert testimony regarding the standard of care applicable to those areas of practice that are common to both disciplines. Corley v. State, Dep't of Health & Hospitals, 32,613 (La.App. 2 Cir. 12/30/99); 749 So.2d 926.
In Pitre v. Opelousas General Hospital, 530 So.2d 1151, 1156-57 (La.1988), the Louisiana Supreme Court held that where a doctor negligently performed a bilateral tubal ligation and failed to inform his patient that the operation had been improperly performed:
[T]he doctor owed a duty to the [patient] to exercise the degree of care ordinarily exercised by surgeons performing such operations in that specialty. Moreover, if he was aware of the failure of the operation, he owed them the duty to inform them that the object of sterilization had not been attained.... Furthermore, there is now quite general agreement that a doctor who negligently fails directly to prevent the conception or birth of an unwanted child, as by negligently performing a sterilization ... breaches his duty of care owed to the parents.
The court concluded:
[T]he law recognizes a duty by a physician in this kind of situation to potential parents to take reasonable care to avoid acts or omissions which he can reasonably foresee would be likely to lead to the birth of a child.
Id. at 1158.
Dr. Carl Bowling, director of the pathology laboratory at Lake Charles Memorial Hospital, testified that the report on the tissue submitted to the laboratory by Dr. Clement would have been filed into Ms. Smith's chart and a copy of it forwarded to Dr. Clement. Additionally, he testified that it is below the standard of care for a doctor not to review the pathology report, stating "if the doctor ... removes tissue that gets examined in the pathology department, he's responsible for looking at that report and seeing what the findings are." Dr. Bowling further testified that special knowledge would not be required of a physician to understand the final diagnosis stated on the lab report, i.e., only one tube had been cut during the surgery. According to Dr. Bowling, a fourth-year *157 medical school student would understand the report.
We read Pitre to hold that in a situation such as this, Dr. Clement, regardless of his specialty, had a duty to take reasonable care to insure that he performed the bilateral tubal ligation on Ms. Smith properly, and if he knew or should have known that it may not have been performed properly, he had a duty to inform Ms. Smith. Based upon Ms. Smith's hospital records and Dr. Bowling's testimony, Dr. Clement should have known that the pathology report indicated that only one of Ms. Smith's fallopian tubes had been ligated. If he did not receive the report in the usual course of business, he should have contacted the lab or the hospital to verify the results. His failure to inform Ms. Smith that the procedure may not have been performed properly was a breach of his duty. We find the Smiths did establish a prima facie case against Dr. Clement.

Damages
The PCF argues there was insufficient evidence presented to the trial court to serve as the basis for an award of damages. In Pitre, 530 So.2d at 1161-62, the supreme court determined the damages recoverable by the Smiths to be "the expenses incurred during pregnancy and delivery, the mother's pain and suffering, the father's loss of consortium, service and society, and their emotional and mental distress associated with the birth of an unplanned and unwanted child and the unexpected restriction upon their freedom to plan their family."
An award of damages is a determination of fact which is entitled to great deference on review. There must be an abuse of discretion by the trial court before the award can be disturbed on appeal. Coco v. Winston Indus., Inc., 341 So.2d 332 (La.1976). As such, "the role of an appellate court in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact." Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260 (La.1993), writ denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994).
The PCF points first to the medical expenses awarded. To recover past medical expenses a "plaintiff must prove that, more probable than not, the medical treatment was necessitated by trauma suffered in the accident." Este' v. State Farm Ins. Cos., 96-99, p. 10 (La. App. 3 Cir. 7/10/96); 676 So.2d 850, 857 (citing White v. Longanecker, 93-1122 (La. App. 1 Cir. 5/23/94); 637 So.2d 1213, writ denied, 94-1704 (La.10/7/94); 644 So.2d 640). When a plaintiff claims to have incurred medical expenses and those claims are supported by a bill, the proof is sufficient, unless there is contradictory evidence or reasonable suspicion that the bill is unrelated to the accident. Id. (citing Landry v. City of Abbeville, 625 So.2d 655 (La.App. 3 Cir.1993), writ denied, 93-2820 (La.1/28/94); 630 So.2d 789).
Ms. Smith identified the medical bills, which she testified represented the medical expenses incurred by her during her pregnancy and the delivery of her son. Our review of those bills confirm that they were related to her prenatal treatment, the delivery of Bennon, her follow-up care after the delivery, as well as treatment for Bennon immediately following his delivery. The trial court's award of $23,891.77 in medical expenses was not error.
The PCF next asserts that the trial court's award of $25,000.00 to Mr. Smith for loss of consortium was too high. Mr. Smith testified regarding the effect of the pregnancy at issue on his professional *158 training as an architect and his inability to prepare for his licensing examination. Ms. Smith testified about the effect of the pregnancy on her and how it affected Mr. Smith and their marriage. We note that the effect of Bennon's birth did not end at the time he was born. The Smiths personal relationship, especially during the baby's early life, will continue to be affected for some time.
The compensable elements of damage in a loss of consortium claim are loss of society, sex, service, and support. "Society" is broader than loss of sexual relations. It includes general love, companionship, and affection that the spouse loses as a result of the injury. "Support" is the lost family income that would go to support the uninjured spouse. "Service" is the uncompensated work around the house or educational help with the children which will, as a result of the injury, have to be obtained from another source and at some price.
Broussard v. Romero, 96-973, p. 12 (La. App. 3 Cir. 2/26/97); 691 So.2d 1265, 1273, writ denied, 97-670 (La.4/25/97); 692 So.2d 1092 (quoting Rowe v. State Farm Mut. Auto. Ins. Co., 95-669, p. 25 (La.App. 3 Cir. 3/6/96)); 670 So.2d 718, 732, writ denied, 96-824 (La.5/17/96); 673 So.2d 611. Considering the testimony of the Smiths and the situation presented, we find no error with the award for loss of consortium.
The PCF also complains that the trial court's award of damages in favor of Ms. Smith is not supported by the record. We do not agree. Mr. and Ms. Smith took steps to insure that they did not have any more children after their second child was born in August 1996. Not only were they surprised to learn that Ms. Smith was pregnant, they were not in a financial position that allowed them to deal with the prospect of another child easily. Their living quarters were too small. Neither of their vehicles was large enough to accommodate another child. During the pregnancy, an ultrasound indicated that there might be a problem with the baby. Ms. Smith was depressed during much of the pregnancy which affected her relationship with her husband and their children. She felt like she was not there for them when she should have been. Additionally, the baby was breach and had to be delivered by C-section which increased Ms. Smith's recovery time. Under the facts presented, we find no abuse of discretion by the trial court.

Frivolous Appeal
The Smiths seek attorney fees on the basis that Dr. Clement's and the PCF's appeals are frivolous. Recently, in Broussard v. Union Pacific Resources Co., 00-1079, pp. 9-10 (La.App. 3 Cir. 1/31/01); 778 So.2d 1199, 1205, writ denied, 01-589 (La.4/27/01); 791 So.2d 118, this court addressed this issue:
Louisiana Code of Civil Procedure Article 2164 provides for an award of damages for frivolous appeal. Lack of merit to an appeal does not necessarily mean that the appeal is frivolous. Hershell Corp. v. Fireman's Fund Ins. Co., 98-1352 (La.App. 3 Cir. 6/2/99); 743 So.2d 698. "Appeals are always favored and, unless the appeal is unquestionably frivolous, damages will not be allowed." Hampton v. Greenfield, 618 So.2d 859, 862 (La.1993). "Damages for frivolous appeal are only allowed when `it is obvious that the appeal was taken solely for delay or that counsel is not sincere in the view of the law he advocates even though the court is of the opinion that such view is not meritorious.'" Id. (quoting Parker v. Interstate Life & Accident Ins. Co., 248 La. 449, 179 So.2d 634, 636-37 (1965)).
*159 In this case and at least one other, Dr. Clement and his wife, who is his office manager, worked together to delay proceedings instituted against the doctor, denying that service of process had been effected on them in order to avoid legal proceedings instituted against the doctor. After a hearing on his motion for new trial and/or action for nullity, the trial judge accurately described their actions as "an inexcusable and disingenuous lack of interest and feigned ignorance in proceedings against [them] ... designed to frustrate and delay the proceedings and to prejudice the rights of other litigants." The judge further described their behavior as "both egregious and contumacious."
Considering the facts of this case, the law established in Pitre, 530 So.2d 1151, and Dr. Clement's arguments on appeal, we find that this appeal is so devoid of merit that it justifies the label frivolous. We grant an award of an additional $1,500.00 in attorney's fees as damages for a frivolous appeal against Dr. Clement.
While the PCF's behavior is not of the same nature as that of Dr. Clement, we conclude that its appeal is frivolous as well. The PCF alleges that the Smith's judgment is based on hearsay evidence, documentary and testimonial; however, it does not identify in its brief which evidence it contends is hearsay or cite any legal support for its position. Furthermore, even though each Defendant takes the position that the Smiths failed to establish the standard of care for Dr. Clement in this case, they do not address the case of Pitre, 530 So.2d 1151, which clearly governs the facts presented herein.
The PCF also attacks the award of damages; however, none of its arguments on the issue are supported by citations to legal authority. Specifically, it argues that the award of medical expenses was unsupported; however, it does not set forth the requirements for proving medical expenses or how the Smiths' evidence failed to meet their burden of proof. Further, its argument with regard to the award of damages in favor of Ms. Smith consists of the mere statement: "Likewise, the testimony of Ms. Smith does not support the amounts awarded."
We find the PCF's defenses meager and unsubstantiated. Attorney fees in the amount of $1,000.00 are awarded in favor of the Smiths and against the PCF as damages for frivolous appeal.
For the reasons, set forth in LeBlanc v. Barry, 00-709 (La.App. 3 Cir. 8/30/00); 771 So.2d 696, writ denied, 00-2638 (La.11/17/00); 774 So.2d 977, we find no error with the trial court's granting the PCF's motion to intervene and appeal.

Decree
The judgment of the trial court is affirmed. Dr. Clement and the PCF are ordered to pay the Smiths' attorney's fees in the amount of $1,500.00 and $1,000.00, respectively, as damages for this frivolous appeal. Costs of this appeal are assessed to Dr. Richard J. Clement and the Patient Compensation Fund.
AFFIRMED; DAMAGES AWARDED FOR FRIVOLOUS APPEAL.