I,YELVERTON, J.
R & R Steel Erectors appeals a judgment from the Office of Workers’ Compensation which refused to confirm a default judgment finding that Terry Watson violated Louisiana Revised Statute 23:1208. The judgment also dismissed all claims of R & R with prejudice. We reverse and render.
FACTS
Watson injured his lower back on December 6, 1999, while employed as a construction worker for R & R Steel Erectors (R & R). Watson and a co-worker were climbing two 12-foot ladders at the same time while carrying a 24-foot truss. The co-worker was climbing faster than Wat *1230 son, which caused the truss to tilt and pull him off the ladder. Watson was six to eight feet in the air at the time. He hit the ground standing up and still holding the truss, jarring his back. R & R began paying workers’ compensation benefits.
On August 24, 2000, R & R filed a claim with the Office of Workers’ Compensation disputing Watson’s disability and his need for additional medical treatment. It alleged that Watson had violated Section 1208 of the Workers’ Compensation Law, thereby forfeiting any entitlement to benefits, and subjecting himself to civil and criminal penalties and restitution.
No answer was filed by Watson. A preliminary default was entered on November 30, 2000. A hearing to confirm the default was held on May 14, 2001. After reviewing the evidence and listening to arguments on behalf of R & R, the workers’ compensation judge refused to confirm the default judgment. Judgment was entered accordingly, and the judgment dismissed all claims of R & R with prejudice.
|?R & R argues on this appeal that the workers’ compensation judge erred in refusing to confirm the default judgment. It additionally contends that the workers’ compensation judge erred in dismissing its claim with prejudice.
CONFIRMATION OF A DEFAULT JUDGMENT
We recognize that the refusal to confirm a default judgment is not by itself a final judgment because the plaintiffs claims are not rejected. Band v. First BankCard Center, 94-3062 (La.2/9/95); 650 So.2d 738. Therefore, it is not appeal-able. Deville v. Carmouche, 450 So.2d 24 (La.App. 3 Cir.1984). However, in the present case a final judgment was rendered because R & R’s claims were dismissed with prejudice. Therefore, we have before us a final appealable judgment. See State Through Dept. of Soc. Ser. v. R.H., 93-2312 (La.App. 1 Cir. 10/7/94); 644 So.2d 853; and Griffin v. Pecanland Mall Ass’n Ltd., 535 So.2d 770 (La.App. 2 Cir.1988).
Louisiana Revised Statute 23:1316.1 provides for the confirmation of a default judgment in workers’ compensation cases as follows:
A. A judgment by default on behalf of any party at interest must be confirmed by proof of the demand sufficient to establish a prima facie case. If no answer is filed timely, this confirmation may be made after two days, exclusive of holidays, from the entry of the judgment of default.
B. A prima facie case shall include but not be limited to proof of the following:
(1) The employee’s average weekly wage.
(2) The existence of an employer-employee relationship at the time of the work-related accident.
(3) The occurrence of an accident arising out of and in the course of the employment, or the existence of an occupational disease.
|s(4) Entitlement to benefits under the provisions of this Chapter.
C. Medical evidence shall include oral testimony, or a sworn narrative report from all treating and all examining health care providers. All other evidence may be presented by sworn affidavit.
Subsection B obviously lays out the requirements for establishing a prima facie *1231 case when a claimant is seeking to obtain a default judgment for benefits. However, Louisiana Revised Statute 23:1316.1 recognizes that any party at interest may obtain a default judgment. In Sessions & Fishman v. Liquid Air Corp., 616 So.2d 1254, 1258 (La.1993), the supreme court explained the prima facie requirement with respect to a default judgment as follows:
In order for a plaintiff to obtain a default judgment, “he must establish the elements of a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant.” Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La.1989); Blue Bonnet Creamery, Inc. v. Simon, 243 La. 683, 146 So.2d 162, 166 (1962). “In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits.” Thibodeaux, 538 So.2d at 1004. A plaintiff seeking to confirm a default must prove both the existence and the validity of his claim.
The employer is the plaintiff in the present case. If no record is made of the confirmation proceeding, the judgment is presumed to be supported by sufficient evidence. When there is a record of the confirmation proceeding, the presumption does not attach. Id. The confirmation hearing in the present case was recorded and transcribed; thus, the presumption that the judgment is supported by sufficient evidence does not attach.
The requirements for forfeiture of benefits under Section 1208 governing misrepresentations concerning workers’ compensation benefits are that: (1) there is |4a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment.
R & R argues that the workers’ compensation judge committed an error of law by applying the incorrect standard of proof when he stated, “Because I am dealing with a confirmation of default or 23:1208 fraud violation. That’s a harsh penalty, strictly construed, heavy burden, I don’t know if it’s a heavy burden but it’s a strong burden on the employer to prove these things.” We do not find that he applied the incorrect burden of proof. The workers’ compensation judge was merely recognizing the jurisprudence which states that forfeiture of benefits under Section 1208 is a harsh remedy which must be strictly construed. Smith v. Quarles Drilling Co., 99-171 (La.App. 3 Cir. 6/2/99); 741 So.2d 829, writ denied, 99-1949 (La.10/8/99); 751 So.2d 227. A reading of the dialogue between the workers’ compensation judge and the attorney for R & R reveals that the workers’ compensation judge was aware that a party seeking the confirmation of a default judgment must establish a prima facie case that it is entitled to judgment. In this case that meant that R & R had to make a prima facie showing that Watson willfully made a false statement or misrepresentation for the purpose of obtaining benefits.
In support of its case R & R introduced certified medical records of Dr. Forest Pommerenke. Watson had seen three doctors since the accident. Dr. Pommer-enke was the third one. Dr. Pommerenke first saw Watson on March 8, 2000. At that time Watson related the events of his accident and was complaining of pain in the lower right side of his back which he communicated had remained the same since the accident. An MRI, bone scan, and plain films were normal. At that time *1232 Dr. Pommerenke diagnosed Watson with lumbar strain.
|RPr. Pommerenke saw Watson on two more occasions, the last on June 21, 2000. Watson reported no improvement. On the last visit, Dr. Pommerenke noted callouses on Watson’s hands. Apparently sensing something was wrong, the doctor made the following note in his medical records:
I observed Mr. Watson as he left our Clinic walking to a red pickup truck, he had a normal gait, good heel-toe progression, and excellent speed. When he got into the truck he apparently leaned down to the right side of the truck without any difficulty, and easily popped back up, and lit a cigarette. Based on these observations I do not think that Mr. Watson’s pain is as significant as he led me to believe while in clinic.
R & R also introduced a video surveillance tape with an affidavit of Joseph Schembre who attested that he took the video of Watson on June 27, July 8, July 12, and July 17, 2000. In addition to this videotape, two recorded statements of Watson taken on December 16, 1999, and July 28, 2000, were introduced with affidavits from the people who conducted the interviews with Watson.
Watson stated that he was on light duty and that he could not do any heavy lifting. He did admit that he picked up his son who weighed about 25 pounds, but he said it hurt him a lot. When questioned whether he could do repeated bending of less than forty-five degrees, Watson replied, “I can’t do it.” Watson stated that he could not bend down past his knees. He could only shop at WalMart for 20 to 25 minutes, and then he had to leave due to the pain. Watson also stated that he walked with a limp. He added that he could not work in the garden around the house. He stated that he “tried to get a shovel and dig a little hole and it don’t work.” He even stated that he had not done any digging since the accident other than try to get trash out of his ditch with a shovel. He stated that digging a hole would be “totally impossible.” Watson stated it “bothers [him] to walk up steps now” and that it would be impossible | fito get into his trailer without steps because he “can’t lift [his] leg that high without [him] feeling like [he is] messing something up.” He agreed that he would not be able to get into the trailer if the steps were missing and that it would be “impossible.”
Unlike the case of Hodapp v. Sam’s Wholesale, 01-0772 (La.App. 3 Cir. 2/6/02); - So.2d -, 2002 WL 181963 recently rendered by this court, the videotapes indicate that Watson clearly lied about his physical abilities.[1] The videotape showed Watson working outside his trailer in the yard in July during the middle of the day during the several days he was taped. He was able to use a gas-powered weedeater with no apparent problem. He can be seen bending far below his knees for several minutes at a time. Watson dug a hole using a great deal of force as he jumped on the shovel before he reached down to scoop out the dirt. This activity lasted for several minutes with no rest time. He can also be seen placing his foot into the trailer door and pulling him *1233 self into the trailer with ease and without the use of steps. None of these activities appeared to bother Watson at all. These activities were performed with ease and no hesitation. There is no question that Watson lied in his statement to the adjuster which was given only a couple of weeks after he was taped.
R & R also introduced evidence of Watson’s medical treatments while he was in prison where he complained of back pain. The workers’ compensation judge did not find that it was significant that he denied he had previously hurt his back, suspecting that Watson was merely trying to get out of work in jail and he never was 17seen by a doctor. We agree that this evidence is not significant to establish that Watson may have lied about previous back injuries.
However, we do find that Dr. Pommer-enke’s notes and the videotape when compared with Watson’s statements are sufficient evidence to establish a prima facie case that Watson lied about his injuries and abilities for the purpose of obtaining workers’ compensation benefits, and that he therefore committed fraud under Louisiana Revised Statute 23:1208 forfeiting his right to workers’ compensation benefits.
For these reasons, we find that the workers’ compensation judge erred in failing to confirm the default judgment. We render judgment confirming the preliminary default. We find that Watson forfeited any right to workers’ compensation benefits. Costs of this appeal are assessed to Terry Watson.
REVERSED AND RENDERED.

. In Hodapp, - So.2d -, a majority of the panel members found that Ms. Hodapp gave a vague answer of "I'm not sure” when posed the question of whether or not she had worked with a shovel out in her yard, and that this did not amount to fraud. Ms. Ho-dapp admitted she had fiddled with the plants in her yard which is exactly what the surveillance videotape established.