STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-108

DAVID HARRELL

VERSUS

BROOKSHIRE GROCERY COMPANY

************

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 2
PARISH OF RAPIDES, NO. 08-20268
JAMES L. BRADDOCK, WORKERS' COMPENSATION JUDGE

************

ELIZABETH A. PICKETT
JUDGE

************

Court composed of Elizabeth A. Pickett, Billy Howard Ezell, and Phyllis M. Keaty, Judges.

AFFIRMED.

Keaty, J., dissents in part and assigns written reasons.

Dale G. Cox, Jr.
Attorney at Law
501 Caddo Courthouse, 5th Floor
Shreveport, Louisiana 71101-5400
(318) 226-6832
Counsel for Defendant/Appellant:
    Brookshire Grocery Company

Dorwan G. Vizzier
Broussard, Halcomb & Vizzier
Post Office Box 1311
Alexandria, Louisiana 71309-1311
(318) 487-4589
Counsel for Plaintiff/Appellee:
    David Harrell

**PICKETT, Judge.**

The defendant, Brookshire Grocery Company (Brookshire), appeals a judgment rendered by the workers' compensation judge (WCJ) in favor of the claimant, David Harrell, finding that he was injured in a work-related accident and awarding him workers' compensation benefits, medical expenses, and a power wheelchair.

## STATEMENT OF THE CASE

Harrell, an overnight stocker at a Brookshire-owned Super 1 grocery store in Alexandria, Louisiana, testified that on the evening of April 23, 2005, he was stocking groceries in the glass aisle of the store when his supervisor, James Newman, called out for help. Harrell ran to the end of the aisle and saw Newman backing a forklift off the foot of Jonathan Ridder, another Brookshire employee. Harrell put Ridder into a wheelchair and rolled him to the front of the store where another stocker was waiting with a car to take Ridder to the hospital. Harrell lifted Ridder to put him into the back of the car, but because Ridder did not put a foot down, he was "dead weight," and Harrell almost dropped him. Harrell stated that he asked Newman for help, explaining that he had a "catch" in his back, and together they got Ridder into the car.

According to Harrell, something popped in his back when he was picking Ridder up, and then his back began burning and tingling. He testified that as they were walking back into the store, he told Newman that he thought he had hurt his back because it felt funny and was burning. Harrell then resumed his stocking duties, working an additional four hours or so before leaving his shift. He did not seek medical attention at the time, thinking that his back was just tired and that the pain would go away.

1

Harrell testified that, during the next shift that he worked, he told his head supervisor, Alphonsa Lenyard, that he had been injured during his previous shift. When Newman asked Lenyard for an accident report form for Harrell, Lenyard replied that they had used the last form for Ridder's accident. A day or two later, Harrell reported his injury to Scott Lachney, the assistant store director, who gave him a form to fill out regarding the accident. He completed the form in front of Lachney, returned it to him, and never saw it again. Harrell reported his injury to the store director, Randy Randall, around the same time, and Randall filled out a Partner's First Report of Injury form.

Harrell continued working for several days after the accident, but one evening he was not able to unload a truck because of his back pain. Either Lachney or Randall told him to go home and not come back until he had seen a doctor. He sought treatment at the St. Frances Cabrini Hospital Emergency Room (ER) on April 29, 2005. The initial triage information noted that Harrell's complaints were of back, right groin, and right neck pain since helping an injured co-worker six days prior. Harrell was discharged that same date with diagnoses of sprain/strain of the lumbar and cervical regions. He was given a note to return to work on May 2, 2005, and was told to follow up with his physician. Harrell returned to Brookshire after his ER visit, and Randall referred him to Dr. Gregory Bevels, a family practitioner. Harrell has not worked since that time.

Dr. Bevels referred Harrell to Dr. Rayland Beurlot, a physical medicine and rehabilitation specialist, in August of 2005. Harrell then began treatment with Dr. Gerald Leglue, another physical medicine and rehabilitation specialist, in September of 2005. In May of 2006, Dr. Leglue referred Harrell to Dr. Michael Dole,

a pain management physician. Dr. Dole sent Harrell to Dr. James Quillin, a psychologist, for treatment for depression. Around that time, Harrell was also seen by Dr. Anil Nanda, a neurosurgeon. At the time of trial in May and June of 2010, Harrell was treating regularly with Drs. Dole and Quillin.

Brookshire instituted indemnity benefits and began paying Harrell's medical expenses shortly after his injury. Brookshire began surveillance of Harrell in April 2006, which continued until September 2010. Brookshire sent Harrell to Dr. Rennie Culver, a psychiatrist, on March 20, 2007, and to Dr. Karl Bilderback, an orthopedic surgeon, on July 9, 2008, to have them render second medical opinions regarding Harrell's mental and physical condition. Shortly after receiving Dr. Bilderback's report in late July of 2008, Brookshire terminated Harrell's indemnity benefits and restricted payment of his medical benefits to treatment with Dr. Dole to wean him off of narcotics.

Harrell filed a 1008 Disputed Claim for Compensation (1008) against Brookshire on August 7, 2008, seeking reinstatement of indemnity benefits, payment for a power wheelchair, payment of behavioral pain management expenses, and penalties and attorney fees pursuant to the Louisiana Workers' Compensation Act, La.R.S. 23:1021-1415. According to the 1008, Harrell claimed to be totally, or temporarily totally, disabled, "or alternatively disabled to return to his former employment under supplemental earnings benefits."

Brookshire answered Harrell's claim, denying that he suffered any injury or disability, and asserting that because Harrell had made willful misrepresentations and engaged in fraudulent conduct in order to obtain compensation benefits, he forfeited his right to continue receiving workers' compensation benefits.

3

Thereafter, Harrell filed a supplemental 1008 to allege that Brookshire had failed to authorize prescribed medication and that Brookshire had willfully made false statements and representations for the purpose of defeating his workers' compensation claim.

The matter was tried over the course of three days in May and June of 2010. Oral reasons for judgment were read into the record on September 29, 2010. A written judgment was signed on October 27, 2010, decreeing the following:

1. Ordering Brookshire to pay Harrell temporary total disability (TTD) benefits at the rate of $273.33 per week for each weekly period from July 28, 2008, together with legal interest on each payment from its due date until paid;

2. Ordering that Harrell was and is entitled to continued medical care through Michael Dole, M.D. and continued care with the psychologist, James W. Quillin, Ph.D., including behavioral pain management prescribed by Dr. Quillin;

3. Ordering Brookshire to pay for Harrell's past medical expenses incurred in connection with the diagnosis and treatment of the on-the-job injuries in the amount of $12,295.68, together with legal interest from the date of judicial demand until paid in full;

4. Denying Harrell's claims that Brookshire committed fraud under La.R.S. 23:1208;

5. Denying Brookshire's claims that Harrell committed fraud under La.R.S. 23:1208;

6. Denying Harrell's claims against Brookshire for statutory penalties and attorney fees for the termination of weekly benefits, for failure to pay medical expenses, and for failure or refusal to authorize medical treatment;

7. Setting the amounts due for the bills for certified medical records and the fees of experts testifying on Harrell's behalf, and the costs of court reporters for trial deposition, and taxing those amounts as costs, which Brookshire was ordered to pay.

Brookshire now appeals.

4

## ASSIGNMENTS OF ERROR

Brookshire asserts four assignments of error:

1.    The trial court erred in finding that claimant sustained an accident that produced a disability in the course and scope of his employment.

2.    The trial court erred in finding that claimant had proved by clear and convincing evidence his entitlement to temporary, total disability benefits.

3.    The trial court erred in finding that defendant had failed to prove its defense of intentional misrepresentation.

4.    The trial court erred in finding that claimant was entitled to medical treatment with Dr. Michael Dole and Dr. James Quillin and payments for the motorized wheelchair.

## DISCUSSION

### Workplace Accident

A worker bringing a compensation action against his employer bears the burden of proving, as a threshold requirement, that he suffered "personal injury by accident arising out of and in the course of his employment." La.R.S. 23:1031(A); *Bruno v. Harbert Int'l Inc.*, 593 So.2d 357 (La.1992). The word "accident" as used in La.R.S. 23:1031 is defined as "an unexpected or unforeseen actual, identifiable, precipitous event happening suddenly or violently, with or without human fault, and directly producing at the time objective findings of an injury which is more than simply a gradual deterioration or progressive degeneration." La.R.S. 23:1021(1).

We recently discussed the standard of review to be employed in workers' compensation cases, noting:

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. *Smith v. Louisiana Dep't of Corrections,* 93-1305 (La. 2/28/94); 633 So.2d 129. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but

5

whether the factfinder's conclusion was a reasonable one. *Stobart v. State,* 617 So.2d 880 (La.1993). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Id.* Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.,* 558 So.2d 1106, 1112 (La.1990).

"The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." *Jackson v. Am. Ins. Co.*, 404 So.2d 218, 220 (La.1981). This court has held that, in light of that standard of review, "great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility." *Cent. Lumber Co. v. Duhon*, 03-620, p. 3 (La.App. 3 Cir. 11/12/03), 860 So.2d 591, 593, *writ denied*, 04-315 (La. 4/2/04), 869 So.2d 880 (quoting *Garner v. Sheats & Frazier*, 95-39, p. 7 (La.App. 3 Cir. 7/5/95), 663 So.2d 57, 61).

*Green v. Nat'l Oilwell Varco*, 10-1041, p. 3-4 (La.App. 3 Cir. 4/27/11),63 So.3d 354, 357-58 (quoting *Foster v. Rabalais Masonry, Inc.*, 01-1394, pp. 2-3 (La.App. 3 Cir. 3/6/02), 811 So.2d 1160, 1162, *writ denied,* 02-1164 (La. 6/14/02), 818 So.2d 784) (alterations in original).

Harrell suspected that something was wrong with his back immediately after he lifted Ridder into the car on April 23, 2005, and he informed his various supervisors of his back pain either during that shift or within a few days of the accident. He also sought medical treatment once he realized that the pain was not just routine soreness that would resolve on its own. Although Harrell's supervisors were unsure about the exact date of when they learned of his accident, none disputed having learned of it before the accident report was filled out on May 2, 2005.

The WCJ's factual finding that Harrell suffered injuries as a result of a workplace accident is reasonable in light of the record evidence. Brookshire's first assignment of error is without merit.

## Entitlement to Temporary Total Disability Benefits

Brookshire argues that surveillance videos and the reports of Dr. Bilderback show that Harrell is lying about the extent of his injury and that he is capable of returning to work. It also alleges that there are no objective findings of injury to support a claim of (TTD) benefits.

A workers' compensation claimant seeking temporary or permanent total disability benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment because of his physical condition. *Greis v. Lake Charles Mem'l Hosp.*, 97-1258 (La.App. 3 Cir. 3/6/98), 709 So.2d 986, *writs denied*, 98-937, 98-939 (La. 5/15/98), 719 So.2d 467.

In this case, the WCJ weighed testimony from Dr. Leglue and Dr. Dole, Harrell's treating physicians, who discussed the injuries, symptoms, and results of diagnostic tests they performed on Harrell over several years. The WCJ chose to accept that evidence as credible. In doing so, the WCJ discounted the surveillance video of Harrell engaged in different activities and the opinion of Dr. Bilderback, who saw Harrell only once for an evaluation. Our supreme court has made clear that an appellate court should not substitute its opinion for the credibility determinations made by the finder of fact. *Leal v. Dubois*, 00-1285 (La. 10/13/00), 769 So.2d 1182.

We find that the record before us supports the finding made by the WCJ that Harrell is entitled to TTD benefits, and to have his medical treatment with Dr. Dole and Dr. Quillin paid for by Brookshire. We find no merit in the second and fourth assignments of error.

**Intentional Misrepresentation**

Louisiana Revised Statutes 23:1208(A) provides that it shall be unlawful for any claimant or employer "to willfully make a false statement or representation" "for the purpose of obtaining or defeating" any workers' compensation benefit or payment. The statute further provides that if the WCJ determines that a claimant has violated the statute, he or she will forfeit their right to workers' compensation benefits.

"The requirements for forfeiture of benefits under Section 1208 governing misrepresentations concerning workers' compensation benefits are that: (1) there is a false statement or representation; (2) it is willfully made; and (3) it is made for the purpose of obtaining or defeating any benefit or payment." *R & R Steel Erectors v. Watson*, 01-1322, pp. 3-4 (La.App. 3 Cir. 3/6/02), 809 So.2d 1228, 1231. An appellate court reviews a WCJ's factual findings with regard to a claim of forfeiture of benefits under the manifest error/clearly wrong standard. *Doyal v. Vernon Parish Sch. Bd.*, 06-1088 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, *writ denied*, 07-832 (La. 6/15/07), 958 So.2d 1190.

Brookshire contends that Harrell intentionally misrepresented the extent of his injuries in order to receive benefits. To support its claim, Brookshire introduced video surveillance to show that Harrell was able to perform more strenuous activities than he claimed to his doctors. In rejecting Brookshire's defense of intentional misrepresentation, the WCJ determined that although Harrell had exaggerated his symptoms and his abilities, and although the video surveillance showed him doing activities that he claimed to be unable to do, "the evidence did not present significant

credibility issues" and Harrell's actions did not amount to a sufficient showing of fraud so as to trigger forfeiture of benefits under La.R.S. 23:1208.

The WCJ's finding is supported by the deposition testimony of Dr. Dole, who stated:

Q. Okay. Doctor, if in fact over the course here, let's say from 2006, 2007, 2008, 9 or even 10, that on occasions David Harrell had, let's say he'd used a push mower in his front yard for ten or fifteen minutes or twenty minutes to mow part of his yard, that he'd used a riding mower, whether he had ridden on a motorcycle or a dune buggy or that he lifted a piece of veneer plywood or that he went fishing on occasions or that he'd lifted a tire, an aluminum wheel into his van or that he picked up paper or cleaned up his place, his yard kind of policing action or that kind of stuff, would any of those individually change any opinions that you've issued here today?

A. I don't think so. Mr. Harrell has told me he has done those things. I think he has a horse he rides on occasion that he really – you know, that's the most enjoyment he gets out of life is getting on his horse. When he does that, he states that it really flares up his back pain, but he really enjoys doing it but it generally kind of lays him out for a day or two after that, and he takes care of his yard and, you know, there's things that he has to do around the house, but he's able to do those at his own pace, you know, when he's feeling better and then, you know, if he needs to take a break or if he needs to lay down for a day or two after that, then he can do that.

Q. That would be expected given his circumstances?

A. That's very typical of patients that I treat.

We find that the WCJ weighed the medical evidence and the surveillance videos, and its finding that Harrell did not intentionally misrepresent his condition in order to receive benefits is not manifestly erroneous. Brookshire's third assignment of error lacks merit.

9

## CONCLUSION

The judgment of the trial court is affirmed in all respects.  Costs of this appeal are assessed to the employer, Brookshire Grocery Company.

**AFFIRMED.**

DAVID HARRELL

VERSUS

BROOKSHIRE GROCERY COMPANY


**KEATY, J., dissenting in part.**

Although I agree that Harrell was injured as a result of the April 23, 2005 workplace accident, I respectfully dissent from the remainder of the majority opinion.

In *Magee v. Abek, Inc.*, 04-2554, p. 5 (La.App. 1 Cir. 4/28/06), 934 So.2d 800, 807, *writ denied*, 06-1876 (La. 10/27/06), 939 So.2d 1287, the first circuit noted that "[a] claimant's lack of credibility on factual issues can serve to diminish the veracity of his complaints to a physician," and that "in many cases, the credibility of the history given by the claimant to his physicians becomes as important as the medical opinions based in part on that history."

In support of its claim that Harrell forfeited his right to continue receiving workers' compensation benefits, Brookshire offered video surveillance showing Harrell participating in a multitude of strenuous activities with apparent ease. The surveillance also showed that while Harrell routinely used a cane at his doctor appointments and therapy visits, he quickly discarded his cane after those visits, and he did not use a cane around his yard.

The surveillance taken before and after Harrell's July 9, 2008 IME visit with Dr. Karl Bilderback shows him ambling about his yard without using a cane, squatting down while washing his truck tires, and lifting a tire into the back of his

truck with no apparent difficulty. In contrast, Harrell reported to Dr. Bilderback that his pain was eight out of ten, that he had difficulty in forward bending, and that he needed to use his cane during the examination because he "was about to fall." During testing and despite his statements to the contrary, Harrell's reflexes and motor strength were normal and he reported more back pain than leg pain. Before Harrell's scheduled appointment, Dr. Bilderback read Harrell's records from Drs. Michael Dole, Gerald Leglue, Rayland Beurlot, Anil Nanda, and James Quillin, along with some of Harrell's physical therapy notes, Harrell's two EMG/nerve conduction studies, and the films from his October 18, 2005 and September 5, 2006 lumbar MRIs. Based on his physical examination of Harrell, together with the information gleaned from Harrell's medical records, Dr. Bilderback found no evidence to show that Harrell suffered from lumbar radiculopathy or that he was a surgical candidate. Given the fact that the records indicated that Harrell had tried various forms of conservative treatment such as physical therapy and epidural injections, none of which had provided him with lasting relief, Dr. Bilderback opined that Harrell had reached maximum medical improvement (MMI) with regard to his back. He also believed that Harrell could return to work in at least a medium capacity.

After Dr. LeGlue released Harrell to return to work, Brookshire offered Harrell a position as an attendant at the fuel center of its Pineville store, a job which met the light/sedentary duty restriction set by Dr. LeGlue. Harrell rejected the job.

Our supreme court noted, in regard to La.R.S. 23:1208, the workers' compensation anti-fraud statute:

> The legislature has determined workers' compensation fraud is a severe and growing problem and has continually amended Section 1208 to make it easier to enforce and to make the penalties stiffer. It is clear from the history of the statute that the legislature intended that any false

2

statements or representations willfully made for the purpose of obtaining benefits would result in forfeiture of those benefits, and this legislative intent cannot be ignored.

*Resweber v. Haroil Constr. Co.*, 94-2708, p. 8 (La. 9/5/95), 660 So.2d 7, 12-13.

A workers' compensation judge's factual findings with regard to a claim of forfeiture of benefits are reviewed under the manifest error/clearly wrong standard. *Doyal v. Vernon Parish Sch. Bd.*, 06-1088 (La.App. 3 Cir. 2/7/07), 950 So.2d 902, *writ denied*, 07-832 (La. 6/15/07), 958 So.2d 1190. After carefully reviewing the record, exhibits, and surveillance, the only conclusion that I can reach is that the information Harrell gave to his doctors regarding his pain and his abilities amounted to far more than mere exaggerations; it was gross misrepresentations of the truth made with the intent of obtaining and/or prolonging his entitlement to workers' compensation benefits. Thus, I am convinced that the workers' compensation judge committed manifest error in concluding that Harrell's misrepresentations did not amount to fraud sufficient to forfeit his right to continue receiving workers' compensation benefits.

Finally, I find it especially troubling that Harrell often included one or more members of his family, including his children, in his perpetration of fraud, vacillating between ambulating with great ease one moment and pretending to struggle with significant and debilitating pain the next.